## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PATRICIA ANN WADE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-02256-TWP-MJD |
| | ) | |
| INDIANA UNIVERSITY SCHOOL OF | ) | |
| MEDICINE, SHERYL ALLEN, | ) | |
| and ABBY KLEMSZ, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Indiana University School of Medicine ("IU"), Sheryl Allen ("Allen"), and Abby Klemsz ("Klemsz") (collectively, "Defendants") (Filing No. 68), and a Rule 37(b) Motion for Summary Judgment filed by Plaintiff Patricia Ann Wade ("Wade") (Filing No. 72). After IU terminated her employment, Wade filed this *pro se* action asserting claims of employment discrimination and retaliation based on her age, sex, and race, and a deprivation of her equal protection and due process rights. Wade brings these claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), and 42 U.S.C. § 1983 ("Section 1983").

After answering the Complaint, the Defendants filed a Motion for Summary Judgment. Wade then filed a Rule 37(b) motion for judgment, requesting a default judgment against the Defendants as a sanction for spoliation of evidence. For the following reasons, the Court **grants** the Defendants' Motion for Summary Judgment and **denies** Wade's Rule 37(b) Motion.

# I.    BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Wade as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Indiana University is a university of the State of Indiana with its main campus located in Bloomington, Indiana, and a School of Medicine based primarily in Indianapolis. Wade is a white female who was 55 years old when this litigation was initiated. She was hired by IU on July 14, 2008 as a learning specialist in the medical student affairs department ("MSA") of the School of Medicine. As a learning specialist, Wade's primary responsibility was to provide support to medical and graduate students, including support with student study habits. When Wade was hired, her direct supervisor was Mary Alice Bell ("Bell") (Filing No. 70-1 at 6–7, 80, 83–84; Filing No. 11 at 3).

During the course of her employment at IU, Wade had various work performance issues. In May 2012, Bell informed Wade that she had specific performance issues such as sporadic hours that led to not fulfilling the fulltime hours obligation, lack of follow through on projects, lack of initiative and participation, poor judgment, and lack of basic demonstrated knowledge of MSA functioning (Filing No. 70-2). In an effort to address these specific work performance issues Wade was placed on a performance improvement plan from May 29, 2012 through July 27, 2012. The performance improvement plan noted that unsatisfactory improvement could result in corrective action, including termination of employment (Filing No. 70-3). Bell provided the performance improvement plan to Wade during an in-person meeting and discussed the performance issues with

her.  Wade did not contest any of the issues raised in the performance improvement plan; however, she did not agree with some of the critiques (Filing No. 70-1 at 21–29).

On November 1, 2012, Bell and Anne Flaherty ("Flaherty") issued another performance improvement plan to Wade.  The second performance improvement plan identified the following areas of concern: active and effective outreach; active engagement within MSA functions; overall judgment, initiative, and ability to prioritize; and supervision and monitoring of statewide tutoring program (Filing No. 70-4).  Bell and Flaherty met with Wade to discuss the performance improvement plan.  Wade acknowledged that her performance "was still not up to par" and her supervisors were "still not happy." (Filing No. 70-1 at 31–32).

Defendant Allen became the associate dean of the MSA department in July 2013.  In that role, Allen oversaw and supervised the MSA department.  Before becoming the associate dean of the MSA department, Allen was the assistant dean of Diversity Affairs for the School of Medicine.  While in the Diversity Affairs role, Allen would send students to the learning specialist in the MSA department (which was Wade) for assistance with personalized study and work plans.  On many occasions, students would return to Allen and report that Wade was unhelpful and did not provide the requested assistance (Filing No. 70-5 at 1).

After becoming the associate dean, Allen met with Wade on several occasions to provide feedback on her work performance.  In an informal conversation in early October 2013, Bell told Wade that her concerns about Wade's performance were resolved.  However, on October 31, 2013, Allen issued a "second written warning" to Wade for "poor work performance". The warning referred to an earlier written warning that had been issued in August 2013 and noted that Wade's work performance had not improved. Allen's written warning informed Wade that she needed to improve streamlining the tutor process, identifying "high risk" students, and developing an

evaluation form for the learning programs. Wade was warned that if her work performance did not improve she would be subject to further disciplinary action, which could include termination. Allen then met with Wade on or about November 7, 2013, after having issued the written warning (Filing No. 70-6; Filing No. 70-1 at 37–39).

Wade tried to submit an internal grievance in November 2013 based on "false accusations" about her work conduct. In particular, she met with Allen in December 2013 to discuss the matter, and Allen told Wade that another learning specialist would be hired and Wade would be moved to another building, which happened in January 2014. With the move, Wade's access to an electronic database of student records, necessary for her job responsibilities, was blocked (Filing No. 70-1 at 49–51). A formal written grievance of Wade's November 2013 complaint "didn't go anywhere" because she "didn't file timely." *Id.* at 52.

Defendant Klemsz became Wade's direct supervisor in January 2014 when she was made the assistant dean for academic advising and career mentoring in the MSA department. Klemsz met with Wade on several occasions to discuss performance issues (Filing No. 70-7 at 1).

In April 2014, Wade filed an internal grievance against Allen and an executive associate dean, alleging age discrimination based on Wade's perception that it looked like they were trying to get rid of all the older, experienced employees in the MSA department. IU conducted an investigation and interviewed approximately thirty people. Thereafter, IU determined the grievance had no merit (Filing No. 70-1 at 52–54; Filing No. 70-5 at 2).

On December 15, 2014, Wade filed another internal grievance with IU, this time alleging retaliation for filing the April 2014 grievance (Filing No. 70-1 at 61). The retaliation Wade complained of included not being informed of employee development opportunities, lack of a budget, exclusion from work projects or activities, not approving vacation time, hiring another

learning specialist without her input, and reclassifying her attendance at a work convention from being a work-related event to vacation time (Filing No. 70-10). IU determined there was not sufficient evidence of retaliation (Filing No. 70-1 at 61–62).

Earlier in the year, on May 6, 2014, Wade had communicated incorrectly to a medical student that the student had been granted an accommodation for each year of the student's enrollment even though the committee responsible for providing accommodations had granted the student's accommodation for only one year. Wade did not have the authority to approve an accommodation for each year of the student's enrollment. Klemsz first learned of this issue in February 2015 when the student emailed her about the accommodation. On February 27, 2015, Klemsz and a member of the human resources department met with Wade to discuss the incident. Klemsz asked Wade about what had happened and why she had told the student something that was contrary to documentation regarding the student's accommodation. Wade initially denied that she had inappropriately approved the accommodation, but she later acknowledged the incident only after Klemsz presented her with an email addressed to the student from Wade approving the accommodation for four years (Filing No. 70-7 at 1–2).

Klemsz and a member of human resources met with Wade on March 17, 2015, to discuss her work performance issues. They informed Wade that they had lost trust in her ability to perform her responsibilities. Wade was given the option to resign from her employment at IU with a severance package, or she would be terminated. Wade chose not to resign with the severance package, so IU terminated her employment. On April 2, 2015, Allen sent a termination letter to Wade, notifying her that her employment was terminated effective March 27, 2015. The letter noted that the termination was a result of recent performance-related issues that had been discussed with Wade (Filing No. 70-1 at 62; Filing No. 70-7 at 2; Filing No. 70-8 at 1). Wade was 54 years

old at the time of her termination (Filing No. 70-1 at 86).  A white female in her late 30s was hired as the new learning specialist following Wade's termination (Filing No. 70-7 at 2).

Prior to receiving the termination letter, Wade filed an internal grievance regarding her termination.  In her grievance, she requested reinstatement and to be place under a different supervisors. She alleged that her termination was in retaliation for her internal grievances filed against Allen. Wade argued that IU did not follow its corrective action policies when handling her termination. She explained that her inaccurate approval of a student's accommodation was an innocent mistake based on Klemsz's negligence.  Wade alleged two situations where Allen and Klemsz discriminated against students with disabilities or failed to appropriately accommodate students, yet they were not disciplined by IU.  Wade argued that the student accommodation email incident was a pretext for terminating her to retaliate for the prior grievances (Filing No. 70-9). IU investigated the termination grievance and decided that it had no merit (Filing No. 70-5 at 2).

Wade filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 11, 2015 (Filing No. 70-1 at 120–21).  On May 19, 2016, she amended her charge of discrimination with the EEOC (Filing No. 70-11 at 2). Wade asserted charges of age discrimination and retaliation against IU.  She noted her IU internal grievances from April and December 2014 and complained that she then was terminated in March 2015 and replaced by someone ten years younger.  She explained, "I believe I am being discriminated against in my termination because of my age, 54 . . . and retaliated against for complaining of age discrimination in my termination . . . ."  *Id.*  On May 24, 2016, the EEOC issued its Dismissal and Notice of Right to Sue to Wade.  *Id.* at 1.

On August 24, 2016, Wade filed the instant *pro se* Complaint, asserting claims pursuant to Title VII, Section 1981, ADEA, and Section 1983 for employment discrimination and retaliation

based on age, sex, and race, and a deprivation of her equal protection and due process rights ([Filing No. 1](#)).  After two years of litigation, the Defendants filed their Motion for Summary Judgment, and Wade filed her Rule 37(b) Motion for Judgment.

## II.        SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."  *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits

of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

When considering the Defendants' summary judgment motion, the Court views the designated evidence in the light most favorable to Wade, as the non-moving party, and draws all reasonable inferences in her favor. *Bright v. CCA*, 2013 U.S. Dist. LEXIS 162264, at *8 (S.D. Ind. Nov. 14, 2013). "However, employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id.* at *8–9 (citation and quotation marks omitted).

A document filed *pro se* is to be liberally construed, and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

> However, it is also well established that pro se litigants are not excused from compliance with procedural rules. [T]he Supreme Court has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel[.] Further, as the Supreme Court has noted, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Loubser v. United States*, 606 F. Supp. 2d 897, 909 (N.D. Ind. 2009) (citations and quotation marks omitted).

> [E]ven pro se litigants . . . must expect to file a legal argument and some supporting authority. A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . . forfeits the point. We will not do his research for him.

*Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir. 1998) (citations and quotation marks omitted).

# III.    DISCUSSION

The Defendants assert that Wade was terminated for not meeting legitimate employment expectations, and various defenses entitle them to summary judgment. In her Rule 37(b) motion for judgment, Wade asks the Court to enter default judgment against the Defendants as a sanction for spoliation of evidence.  The Court will first address Wade's Motion regarding spoliation of evidence and then turn to the Defendants' Motion.

## A.    Wade's Rule 37(b) Motion for Judgment

Although her Motion is titled and docketed as a "Motion for Summary Judgment," Wade begins her Motion by asking the Court to exercise its inherent authority and, pursuant to Federal Rule of Civil Procedure 37(b), enter default judgment against the Defendants for willful spoliation of evidence.  She also requests monetary sanctions be awarded against the Defendants and sanctions against IU attorneys for "willful violation of the American Bar Association's Model Rules of Professional Conduct, Indiana Rules of Professional Conduct, IUSM Code of Conduct, IU Principles of Ethical Conduct, and IU Whistleblower Policy."  (Filing No. 72 at 1–2.)  The Court treats Wade's Motion as one for discovery sanctions because the arguments, content, and requested relief are consistent with a Rule 37(b) discovery sanctions motion.

Wade argues the "Defendants should have retained all documents related to the [IUPUI Office of Equal Opportunity] age discrimination investigation . . . ," which occurred around June 2014.  *Id.* at 4.  She asserts that the "Defendants willfully destroyed the documents associated with the 2014 IUPUI OEO investigation of age discrimination because the documents either support the Plaintiff's claims of discrimination and account for the Defendants' retaliatory behaviors or reveal other incriminating information."  *Id.* at 5.  She further contends, "Defendants decided that

releasing the requested discovery documents to the Plaintiff would lead to a worse outcome than sanctions for spoliation." *Id.*

Throughout her combined motion and brief, Wade cites case law that explains the legal standard for spoliation of evidence, various discovery sanctions, and default judgment. She then contends: "Pursuant to Fed. R. Civ. P. 37(b)(2)(A & C), the Plaintiff petitions this court to impose a default judgment against the spoliator, the Defendants, along with additional sanctions." (Filing No. 72 at 9.) Wade argues the Defendants knew the evidence from the OEO investigation of age discrimination was relevant to this case, yet they willfully spoliated the evidence, which prejudices her case. She insists that default judgment is warranted because the Defendants spoliated or withheld evidence including: documents related to the 2014 OEO age discrimination investigation and final report, Bell's internal appeal, portions of Allen's personnel file, contents of employee files, birthdates of former and replacement MSA employees, and student summaries and evaluations of Wade's presentations and peer tutoring program.

In response, the Defendants argue the motion should be denied because it was filed prematurely, the Defendants have not violated a discovery order of the Court to warrant a Rule 37(b) sanction, and they have met their discovery obligations. They present a timeline of events to show that Wade's Motion was premature.

On May 11, 2018, in accordance with the Court's scheduling order at Filing No. 52, the Defendants provided written responses to Wade's document requests and produced responsive documents (*see* Filing No. 59 at 2; Filing No. 59-1). Within two weeks of the initial document production, the Defendants supplemented their production with additional documents (Filing No. 59 at 2). After email exchanges regarding additional documents that Wade requested, Wade filed a motion to compel on July 11, 2018 (Filing No. 58). She sought the compelled production of the

employee files of eighteen individuals and documents related to the 2014 OEO age discrimination investigation.

While Wade's motion to compel was pending, the Defendants filed the Motion for Summary Judgment on September 12, 2018, to comply with the dispositive motions deadline. Two days later, on September 14, 2018, the Court granted in part Wade's motion to compel, ordering the Defendants to produce by October 1, 2018, the personnel files of the employees and any additional documents in the Defendants' possession related to the 2014 OEO age discrimination investigation (Filing No. 71 at 3–9).

Instead of waiting until October 1, 2018 (the deadline set by the Court for the Defendants to supplement their discovery responses), Wade filed the pending Rule 37(b) Motion for Judgment based on spoliation of evidence on September 17, 2018 (Filing No. 72). The Defendants argue that they complied with the Court's discovery order and produced additional documents on October 1, 2018, many of which were the employee personnel files and documents related to the 2014 OEO age discrimination investigation, which are the documents Wade complained about prematurely in her pending Rule 37(b) Motion for Judgment. The Defendants assert the documents were not destroyed or spoliated but actually were produced in accordance with the Court's discovery order.

Defendants assert there is no support for Wade's argument that they failed to comply with a court order to warrant Rule 37(b) sanctions. They acknowledge that they were unable to locate several of the "Tabs" of documents listed in the 2014 OEO age discrimination final report, but they produced all the documents that they could locate concerning the investigation and the final report (Filing No. 73-2 at 5–6; Filing No. 76-1 at 1). They also explain that many of the categories of information sought by the OEO investigator, and raised by Wade in her Motion, were not

provided in document form during the investigation but rather were discussed in interviews; thus, documents do not exist for those categories of information (Filing No. 76-1 at 1). Further, the Defendants provided Wade the requested birthdates of former and replacement employees in the MSA department (Filing No. 84-1 at 2).

Lastly, the Defendants contend that they are confused by Wade's assertion that they have selectively withheld student summaries and evaluations of Wade's presentations and peer tutoring program because Wade never requested such documents in her written discovery to the Defendants and did not mention such documents in her Motion to Compel. Having never requested these documents, Wade cannot argue that the documents were withheld.

In her reply, Wade states that she was not aware of the Court's Order on the Motion to Compel when she filed her Rule 37(b) Motion for Judgment concerning spoliation. Even then, she insists, the Defendants have not produced a number of documents associated with the June 2014 OEO investigation of age discrimination. Therefore, she argues, she still is entitled to sanctions against the Defendants, particularly default judgment pursuant to Rule 37(b) (Filing No. 77 at 24).

The Seventh Circuit has explained the applicability of Rule 37(b) sanctions: "The rule's plain language limits its applicability to situations where a court order has been violated. Moreover, the caselaw reveals that Rule 37(b)(2) has been invoked only against parties who have disobeyed a discovery ruling of some sort." . *Brandt*, 30 F.3d at 756; *see also Pain Ctr. of SE Ind., LLC v. Origin Healthcare Sols., LLC*, 2014 U.S. Dist. LEXIS 147874, at *8 (S.D. Ind. Oct. 17, 2014) (Rule 37(b) addresses a party's failure to comply with a court order). Rule 37(b)(2) "sanctions may only be imposed where a party fails to comply with a discovery order and displays

wilfulness, bad faith or fault." *Philips Med. Sys. Int'l, B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir. 1992).

If discovery responses are made but are inadequate, the party seeking discovery must apply to the court for an order to compel discovery (Rule 37(a)); and sanctions cannot be invoked until the court order is disobeyed (Rule 37(b))." *Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co.*, 667 F.2d 600, 604 (7th Cir. 1981); *see also Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994) (Rule 37 sanctions are not available where a plaintiff "failed to obtain a court order compelling [the defendant] to comply more fully with discovery.").

It is clear from the filings in this litigation that Wade filed her Rule 37(b) Motion for Judgment before any violation of a court discovery order could have occurred. Wade also filed her Rule 37(b) Motion for Judgment before she saw the Court's Order on the Motion to Compel—she has conceded this point—and the Motion was filed before the deadline set by the Court for supplemental production. The Defendants produced additional documents to Wade in compliance with the Court's Order on the Motion to Compel by the October 1, 2018 deadline, and they continued to work with Wade to produce additional information after the supplemental production. Wade did not file any other motions to compel, which would have been necessary if she believed the Defendants' supplemental production was insufficient. On this record, there is no basis to award a Rule 37(b)(2) sanction against the Defendants, especially the extraordinary sanction of default judgment. *See Britt Interactive LLC v. A3 Media LLC*, 2017 U.S. Dist. LEXIS 218918, at *7 (S.D. Ind. Aug. 23, 2017) (denying default judgment for discovery violations because "[a] sanction under either Rule 37 or the court's inherent power must be proportional to the offense," and default judgment is an "extraordinary sanction"). Therefore, Wade's Rule 37(b) Motion for Judgment (Filing No. 72) is **denied**.

B. **<u>Defendants' Motion for Summary Judgment</u>**

In their Motion for Summary Judgment, the Defendants raise various defenses, which they assert entitle them to summary judgment, and also argue that summary judgment is warranted because Wade was terminated for not meeting legitimate employment expectations.

1. **<u>Title VII Race and Sex Discrimination Claims</u>**

Defendants argue that Wade failed to administratively exhaust her remedies for race and sex discrimination claims under Title VII, and thus, she cannot assert those claims in this action. Wade's EEOC charge of discrimination had the boxes checked for "retaliation" and "age," but it did not have the "race" or "sex" boxes checked ([Filing No. 70-11 at 2](#)). In describing her EEOC charge against the Defendants, Wade explained, "I believe I am being discriminated against in my termination because of my age, 54 . . . and retaliated against for complaining of age discrimination in my termination . . . all in violation of the Age Discrimination in Employment Act of 1967, as amended." *Id.* The Defendants assert, "Wade clearly was not contemplating discrimination claims based on race or sex at the time she filed her charge of discrimination," ([Filing No. 69 at 9](#)) and because her Title VII race and sex discrimination claims are outside the scope of her EEOC charge, the claims must be dismissed.

Wade did not provide any argument or evidence to dispute the Defendants' argument and evidence concerning dismissal of the Title VII claims. Instead, she asked the Court to for clarification on whether the claims may proceed.

The Seventh Circuit has been clear that "a Title VII plaintiff may bring only those claims that were included in her original EEOC charge, or that are like or reasonably related to the allegations of the charge or growing out of the charge." *Gawley v. Indiana Univ.*, 276 F.3d 301, 313 (7th Cir. 2001) (citations omitted). "An aggrieved employee may not complain to the EEOC

of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).  In light of this clear legal standard, and because Wade's EEOC charge of discrimination complained of only retaliation and age discrimination, the unrelated charges of sex discrimination and race discrimination cannot be brought as claims in this action.  Therefore, summary judgment is **granted** to the Defendants on Wade's Title VII sex and race discrimination claims.

> **2.**      **Sovereign Immunity**

Next, the Defendants assert that IU enjoys Eleventh Amendment sovereign immunity from Wade's Section 1981, Section 1983, and ADEA claims.  Relying on *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1036 (7th Cir. 1987), the Defendants explain that states and state agencies cannot be sued in federal court unless they unequivocally consent to suit or Congress unequivocally abrogates their Eleventh Amendment sovereign immunity pursuant to a valid exercise of power.  Under Seventh Circuit case law, Section 1981, Section 1983, and ADEA claims against state agencies are barred by the Eleventh Amendment because immunity has not been abrogated.  *See Peirick v. Ind. Univ.-Purdue Univ. Indpls. Athletics Dept.*, 510 F.3d 681, 695–97 (7th Cir. 2007); *Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179, 1184 (7th Cir.1982).  IU is an "instrumentality," "arm," or "alter ego" of the State of Indiana for purposes of the Eleventh Amendment, and IU has not waived immunity or otherwise consented to this lawsuit.  *Shannon v. Bepko*, 684 F. Supp. 1465, 1473 (S.D. Ind. 1988); Ind. Code § 34-13-3-5(f).  The Defendants therefore conclude that Wade's Section 1981, Section 1983, and ADEA claims against IU are barred by Eleventh Amendment immunity.

Regarding Defendants Allen and Klemsz being sued in their official capacities, the Defendants assert Eleventh Amendment immunity also extends to individuals "being sued in their

'official capacities.'" *Shannon*, 684 F. Supp. at 1473–74. The Defendants acknowledge one exception to immunity is that a plaintiff may file suit against the individual state officials for "prospective injunctive relief to protect the plaintiff against any further or ongoing violation of his federal rights." *Bissessur v. Ind. Univ. Bd. of Trs.*, 2008 U.S. Dist. LEXIS 69299, at *6 (S.D. Ind. Sep. 10, 2008). Thus, the Defendants assert, Wade may pursue only prospective injunctive relief from Allen and Klemsz in their official capacities.

The Defendants note that individuals being sued in their individual capacity are protected by sovereign immunity when the claim against them is not a "bona fide individual capacity suit" and instead seeks relief that would "expend itself on the public treasury." *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003); *Luder v. Endicott*, 253 F.3d 1020, 1022–23 (7th Cir. 2001). When the plaintiff seeks damages against individual defendants arising from an employment relationship, Eleventh Amendment immunity applies because any damages would be paid by the state employer. *See Omosegbon*, 335 F.3d at 673; *see also Haynes v. Ind. Univ.*, 902 F.3d 724, 732 (7th Cir. 2018) ("University administrators were not parties to [plaintiff's] employment contract in their individual capacities. We have no reason to believe that they, rather than the University, would foot the bill for a resulting judgment. Sovereign immunity therefore defeats [plaintiff's] damages action against the University administrators, both in their individual and official capacities."). Based on this case law, the Defendants argue that Allen and Klemsz are protected by sovereign immunity in their individual capacities against any monetary damages.

Concerning the ADEA claims against Allen and Klemsz, "it is well-established in the Seventh Circuit that neither Title VII nor the ADEA permit individual liability." *Stone v. Bd. of Trs. of N. Ill. Univ.*, 38 F. Supp. 3d 935, 943 (N.D. Ill. 2014). There is "no individual liability under the ADEA," *Horwitz v. Bd. of Educ.*, 260 F.3d 602, 610 n.2 (7th Cir. 2001), and "individual

supervisors who are not otherwise employers cannot be sued under Title VII or the ADEA."
*Cianci v. Pettibone Corp., Beardsley Piper Div.*, 152 F.3d 723, 729 (7th Cir. 1998).

Wade does not present any factual disputes that affect the sovereign immunity analysis. Rather, Wade argues that the Defendants "are not immune under the Eleventh Amendment because they failed to demonstrate good faith efforts to comply with applicable federal employment laws." (Filing No. 92 at 29.)

Wade's sole reliance on the "good faith exception" and good faith efforts of the Defendants is misplaced because that exception and the out-of-circuit case law upon which Wade relies concerns the availability of punitive damages in employment disputes. It does not concern the issue of whether sovereign immunity protects the Defendants. On the other hand, the case law cited by the Defendants' is good law, on point, and controlling in the Seventh Circuit. Their arguments concerning sovereign immunity are well-taken, and with no factual disputes concerning matters relevant to the question of sovereign immunity, the Court **grants** summary judgment to IU on the ADEA, Section 1981, and Section 1983 claims based on IU's sovereign immunity. Summary judgment also is **granted** to Allen and Klemsz based on Eleventh Amendment immunity, except that Wade may pursue prospective injunctive relief from them in their official capacity.[1]

### 3.    <u>Remaining Claims</u>

The only remaining claims for consideration are the Section 1981, Section 1983, and ADEA claims against Allen and Klemsz in their official capacity for prospective injunctive relief.

---

[1] The Complaint and the designated evidence reveals that Wade's claims arise only from Allen's and Klemsz's conduct in their official capacities as employees of an arm of the state. Wade alleges liability based on their conduct as supervisors at IU. They would not be facing Wade's allegations if they were not supervisors at IU. Allen's and Klemsz's actions were undertaken in their official capacities as supervisors at IU. Wade's claims are not a "bona fide individual capacity suit," and she acknowledged in her deposition that she is suing Allen and Klemsz in their official "work capacity." (Filing No. 70-1 at 103–04.)

### i. Section 1981 and Section 1983 Race and Sex Discrimination Claims

The issue in a discrimination case is whether the evidence would permit a reasonable fact finder to conclude that the plaintiff's race, sex, or other protected class caused the termination or other adverse employment action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The evidence must be considered as a whole instead of asking whether any piece of evidence proves the claim by itself. *Id.*

"The substantive standards and methods of proof that apply to claims of racial discrimination and retaliation under Title VII also apply to claims under § 1981." *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012). "[A]lthough section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009) (citation omitted); *see also Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015) ("We apply the same standards to Title VII and § 1981 discrimination and retaliation claims."); *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007) ("we generally have applied the same prima facie requirements to discrimination claims brought under Title VII and section 1981").

A plaintiff supports a discrimination claim by presenting evidence that shows: (1) she belongs to a protected class, (2) she met the employer's legitimate performance expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside her protected class received more favorable treatment. *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016). If the plaintiff makes this showing, then the employer can defeat the claim by articulating a legitimate, non-discriminatory reason for the adverse employment action. The plaintiff then may move forward with her claim only if she can demonstrate that the employer's

proffered reason is pretextual—that is, a lie to hide discriminatory conduct. *Id.*; *see also Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006).

The Defendants argue that Wade's Section 1981 and Section 1983 claims for race and sex discrimination fail as a matter of law because there is no evidence that Wade was terminated as a result of her race or sex; she was terminated because of a history of poor work performance. The learning specialist who was hired after Wade was terminated was also a white female, like Wade. Furthermore, Wade fails to show any similarly situated employee of a different race or sex was treated more favorably than her. The other employees that she pointed to concerning more favorable treatment were assistant or associate deans (Allen and Dr. Haywood) who were not similarly situated employees to Wade who was a learning specialist. Therefore, the Defendants argue, Wade's cannot support her claims for race and sex discrimination under Section 1981 and Section 1983.

Wade opposes summary judgment on her Section 1981 and Section 1983 discrimination claims by asserting that Allen and Dr. Haywood were not terminated when they made poor choices in their work performance, yet Wade was terminated for alleged poor choices in work performance. Wade also argues that one of the performance issues in her employee file was rescinded and that Bell's concerns with Wade's performance were resolved before Allen became the associate dean in the MSA department. She disagrees with the Defendants' view of the last performance issue (the approval of a student's accommodation for multiple years) that occurred before her termination. Thus, Wade argues, there is no basis for the Defendants to claim that she was not meeting legitimate performance expectations.

Wade has failed to support her Section 1981 and Section 1983 claims for race and sex discrimination because she has not presented relevant, admissible evidence to show that similarly

situated employees outside her protected class received more favorable treatment. Assistant and associate deans (supervisory positions) are not similarly situated employees to Wade who was a learning specialist. With no evidence of favorable treatment given to non-Caucasian or male employees who were similarly situated to Wade, her discrimination claims fail as a matter of law. Therefore, the Court **grants** the Defendant's Motion for Summary Judgment on the race and sex discrimination claims under Sections 1981 and 1983.

### ii. Section 1983 Due Process Claim

To determine whether due process requirements apply in the first place' courts "must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712–13 (7th Cir. 2014) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570–71 (1972)). The Defendants note that "[i]n the employment context, a plaintiff generally is required to show that the terms of his employment provide for termination only 'for cause' or otherwise evince 'mutually explicit understandings' of continued employment." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011) (citations omitted). Furthermore, whether an employee has a property interest in his job is a question of state law. *Moulton v. Vigo County*, 150 F.3d 801, 804 (7th Cir. 1998) (citations omitted). "Under Indiana law, an employee at will has no property interest in further employment." *Id.* (citations omitted).

The Defendants argue that because Wade was an at-will employee of IU she had no protected property interested in her continued employment at IU. Thus, her Section 1983 due process claim fails as a matter of law. In support of their argument, the Defendants rely on *Knox v. Trs. of Ind. Univ.*, 160 F. Supp. 3d 1073, 1076 (N.D. Ind. 2016), where the court determined that "Plaintiff did not have a protected property interest in his employment because he served at the

will of the board of trustees of Indiana University," which resulted in dismissal of the due process claim.

The Defendants argue that additional reasons support dismissal of Wade's due process claim. Her claim is based on an alleged failure by IU to adhere to its internal processes during her termination. However, "a plaintiff does not have a federal constitutional right to state-mandated process." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773–74 (7th Cir. 2013) ("It may have been unfair for the university not to follow its own procedures in [plaintiff's] case, but it was not unconstitutional."); *see also Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (no due process right to university process prior to being dismissed because "the federal Constitution's due process clause does not protect an interest in other process"); *Grant v. Trs. of Ind. Univ.*, 2016 U.S. Dist. LEXIS 40732, at \*28–29 (S.D. Ind. Mar. 28, 2016) (dismissing "argument that [plaintiff] was denied federally protected due process rights because IUSB did not follow the procedures within the IU Handbook" because "the Seventh Circuit has repeatedly held that a state-created university process does not confer federal due process rights").

In response, Wade argues that the Defendants disregarded many of IU's corrective action policies prior to her termination as well as disregarded the grievance policies and procedures after her termination. She further argues without evidentiary or legal support that the Defendants "pretended that employees have no due process rights and can be terminated without cause because IU is an at-will employee." (Filing No. 99 at 12.) However, she argues, "IU has adopted a culture that corrective actions should be for just cause." *Id.*

The Seventh Circuit has been clear that federal due process violations do not arise out of a university's failure to strictly follow state-created university processes. Importantly, Wade has not designated an employment contract or pointed to a state statute to show that her employment was

not "at-will." Because she was employed in an "at-will" position, Wade did not have a protected property interested in her continued employment at IU. Therefore, summary judgment is warranted on Wade's Section 1983 due process claim.

### iii.    ADEA Claims

To support an ADEA claim and survive summary judgment, a plaintiff must show that her "age was the 'but-for' cause" of her termination. *Wrolstad v. CUNA Mutual Ins. Soc'y*, 274 F. Supp. 3d 894, 900 (W.D. Wis. 2017) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)). "The ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Id.* (quoting *Gross*, 557 U.S. at 176). "The critical question is whether [the plaintiff] has adduced evidence that would allow a reasonable jury to find that [her] age was the but-for cause of an adverse employment action." *Id.* at 901; *see also Ortiz*, 834 F.3d at 765.

A plaintiff can support an ADEA age discrimination claim by presenting evidence that shows: (1) she was over forty years of age, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated, substantially younger employees were treated more favorably. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771–72 (7th Cir. 2002). If the plaintiff makes this showing, then the employer can defeat the claim by articulating a legitimate, non-discriminatory reason for the adverse employment action. The plaintiff then may move forward with her claim only if she can demonstrate that the employer's proffered reason is pretextual. *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 463 (7th Cir. 2014). "In some cases, however, the issue of meeting legitimate job expectations and the question of pretext overlap. This is particularly true when the employer asserts as the

nondiscriminatory reason for termination that an employee was not meeting legitimate job expectations." *Id.* (citations omitted).

The Defendants argue Wade's ADEA age discrimination claim cannot survive summary judgment because she has not identified a similarly situated, substantially younger employee who received more favorable treatment. Furthermore, Wade was not meeting IU's legitimate employment expectations. She had a history of poor work performance with written warnings and performance improvement plans, and she failed to improve her work performance, which culminated in approving an accommodation for a student when she was not authorized to approve the accommodation and then initially not being forthcoming about the unauthorized approval.

The Defendants assert that Wade's failure to meet IU's legitimate employment expectations defeats her claim, but her failure also serves as the non-discriminatory reason for her termination, and there is no evidence that this reason is pretextual. "Demonstrating pretext [] requires more than a showing that an employer's decision was mistaken or unwise." *Fulmore v. Home Depot, U.S.A., Inc.*, 423 F. Supp. 2d 861, 877 (S.D. Ind. 2006). Rather, pretext is "a lie contrived to mask unlawful discrimination." *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004).

The Defendants argue that it is undisputed Wade had been notified of her performance issues since at least 2012, and they did not see sustained improvement in her performance. Wade's age had nothing to do with her being terminated. Wade has only her personal speculation regarding age discrimination, and this does not show pretext or support her claim.

In response, Wade argues that performance issues are a pretext for her termination, which really occurred because of age discrimination. She asserts that Allen explained to an OEO investigator in 2014 that she had placed Wade on a performance improvement plan in the fall of

2013, yet Allen never actually issued a performance improvement plan to Wade. Allen also claimed meeting with Wade in October 2013 to give her the performance improvement plan, but no such meeting ever occurred.  Wade also argues that a rescinded written warning from December 2014 remained in her employee file and served as an alleged basis for her termination, which Wade argues was inappropriate since the warning had been rescinded. Wade disagrees with the Defendants' view of the student accommodation incident, which was the last incident to occur prior to her termination.  She asserts that the incident occurred because of misinformation that was in IU's database, which she argues was the fault of Klemsz.  Wade asserts that she had no performance issues from 2008 to 2011 and from 2014 to 2015, so she should not have been terminated in March 2015 for performance issues.  She argues that such a reason for her termination is merely a pretext for age discrimination.

The relevant, admissible designated evidence shows a history of performance issues in Wade's employment as a learning specialist at IU.  Wade's supervisors began discussing Wade's poor performance issues with her in May 2012 ([Filing No. 70-2](#)).  Wade was placed on a performance improvement plan from May 29, 2012 through July 27, 2012 ([Filing No. 70-3](#)).  In November 2012, Wade was placed on another performance improvement plan ([Filing No. 70-4](#)).  Wade was issued a second written warning for poor work performance on October 31, 2013, which referred to an earlier written warning issued in August 2013 ([Filing No. 70-6](#)).  Students reported to Allen that Wade was unhelpful and did not provide the requested assistance, and Wade met numerous times with supervisors to discuss performance issues ([Filing No. 70-5 at 1](#)).  Lastly, in May 2014, Wade granted a student's accommodation without authority to approve the accommodation.  Klemsz first learned of the issue in February 2015 and met with Wade on February 27, 2015 to discuss the incident. Wade initially denied it but then acknowledged the

incident only after being confronted with the email addressed to the student from Wade approving the accommodation (Filing No. 70-7 at 1–2). The relevant, admissible designated evidence supports the Defendants' position that Wade was terminated because of a history of poor work performance, culminating in the student accommodation incident—thereby defeating a necessary element of Wade's claim and also providing a legitimate, non-discriminatory reason for her termination.

Wade has not designated relevant, admissible evidence that shows she was meeting IU's legitimate employment expectations or that the Defendants' proffered reason for her termination was a pretext for age discrimination. When responding to the Defendants' position, Wade argued two records of poor work performance should not have been considered during IU's termination decision, and she disagreed about who bore responsibility for the student accommodation incident. Wade did not dispute the numerous other records of poor performance. Importantly however, Wade only speculates how the Defendants considered each of the records of poor performance, and the numerous undisputed records of poor work performance in addition to the last student accommodation incident adequately serve as a basis for IU's non-discriminatory reason to terminate Wade for poor performance.

Wade's disagreement with the Defendants that she was not responsible for the student accommodation incident—even though she was the IU staff member who approved the accommodation—does not create a dispute of material fact that IU was concerned about Wade's poor job performance, and the incident served as the final straw among a history of poor work performance to justify IU's decision to terminate Wade. As the case law has made clear, pretext requires more than a showing that "an employer's decision was mistaken or unwise." *Fulmore*, 423 F. Supp. 2d at 877. The evidence does not support Wade's position that poor work

performance was a pretext for age discrimination. Therefore, the Court **grants** summary judgment to the Defendants on the ADEA age discrimination claim.

Concerning the ADEA retaliation claim, the Defendants argue that Wade's long history of repeated work performance problems led to Wade's termination; her termination was not the result of her complaining about age discrimination. To succeed on a claim of retaliation, a party must produce enough evidence for a reasonable jury to infer that he engaged in statutorily protected activity, that defendants took materially adverse action against him, and that his protected activity caused the adverse action. *Daza v. Indiana*, 331 F. Supp. 3d 810, 848 (S.D. Ind. 2018) (internal citation and punctuation omitted). To establish the required causal connection, a plaintiff must show that the defendant would not have taken the adverse action but for the employee's protected activity. *Id.* (internal citation and punctuation omitted).

The Defendants assert that Wade's performance issues began as early as 2012, she complained of age discrimination and retaliation in April and December 2014, she continued to have work performance issues after complaining, and these "issues came to a head in early 2015." (Filing No. 69 at 21.) The Defendants argue that "[t]here is no evidence in the record to even suggest that the University's issues with Dr. Wade's performance were a guise to cover up intentional discrimination and/or retaliation." *Id.*

Wade responds that Allen created a hostile work environment and bullied her and other employees in the MSA department. She explains that, after her complaints of age discrimination and retaliation in April and December 2014, the hostile work environment persisted, and she was terminated a few months later in March 2015. Wade argues that this is enough to support her ADEA retaliation claim.

As discussed above, the relevant, admissible designated evidence shows that Wade was terminated because of a history of poor work performance, culminating in the student accommodation incident that was brought to light in February 2015. Wade's complaints of a hostile work environment and bullying originate before she submitted any complaints to IU of age discrimination. Wade complained to IU of age discrimination and retaliation in April and December 2014, yet she asserted that Allen tried to eliminate her position in 2013, and she alleged other instances of bullying and hostility directed at Wade and other employees occurring in 2013. By her own argument, Wade has indicated that there was a hostile work environment and bullying at IU prior to her complaints of age discrimination.

To establish the required causal connection to support a retaliation claim, "a plaintiff must show that the defendant would not have taken the adverse action but for the employee's protected activity." *Daza*, 331 F. Supp. 3d at 848. Wade has failed to show a causal connection between her complaints of age discrimination and her termination and the hostile work environment. The evidence and arguments indicate that the termination resulted from a history of poor work performance and the hostile work environment began before Wade complained of discrimination. Thus, summary judgment is warranted on the ADEA retaliation claim.

### IV.    CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment (Filing No. 68) is **GRANTED**, and Wade's Rule 37(b) Motion for Judgment (Filing No. 72) is **DENIED**. The trial is vacated and all other pending motions are **denied as moot**. Final judgment will issue under separate order.

**SO ORDERED.**

Date: 7/12/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Patricia Ann Wade
512 Grand View Street
Spencer, Indiana  47460-1000

James R. A. Dawson
TAFT STETTINIUS & HOLLISTER LLP
jdawson@taftlaw.com

Melissa A. Macchia
TAFT STETTINIUS & HOLLISTER LLP
mmacchia@taftlaw.com

Michael C. Terrell
TAFT STETTINIUS & HOLLISTER LLP
mterrell@taftlaw.com